I don't know if you can hear it, but I'm trying my best to make this as quiet as possible.   I'm trying my best to make this as quiet as possible. Our next case is 15-14716, Robert Fuhrer and Michael Goldberg as trustees versus National Union Fire Insurance Company and Twin City Fire Insurance Company. Mr. Mazur. Good morning, Your Honor. May it please the Court. My name is Jason Mazur of Verplew & Lumpkin in Miami, and I represent the plaintiff-appellant trustees, Michael Goldberg as the liquidating trustee of the Rothstein, Rosenfeld & Adler Liquidating Trust, and Robert Fuhrer as the Chapter 7 trustee of the Banyan Entities, which turned out to be the largest feeder funds into Mr. Rothstein's massive Ponzi scheme. Your Honors, the outcome of this appeal today is of critical importance to all Florida executives insured under Director's and Officer's Liability Policies, fiduciaries who are court-appointed to recover under these policies, such as my clients and also the FDIC. Do they all have the same kind of policy that your client had? Because it seems like your client should have gotten a better policy or a clearer policy. Well, that's the problem, Your Honor. The policy is anything but clear, and that is fully under Florida law. My question is, it looks like from the different cases, there are all sorts of different exclusions. Are you telling us every director or officer of a bank has this kind of policy so our decision controls them, or do they all have different kinds of policies? No, I'm not saying they are all the same. What I will tell you is this is a standard national union policy, National Unions AIG. This is an ISO form, so it is widely applicable. The reason this is important is because what the district court did in – Well, we know it's important. Maybe you could help me. I don't understand the professional – how you're interpreting the professional services exclusion. It's there. It means something. Tell me what you think it means and give me an example of where you think it would apply. It means what it says, Your Honor, and that is the professional services exclusion. And this policy, as all the case law from out the country has pointed out, is that when you include a professional services exclusion in a director and officer management liability policy, it must be narrowly construed to only bar coverage for allegations of E&O misconduct, professional negligence to the customers. It must never be construed – Well, tell me – give me a real example where you think it applies. Sure. I'll give you an example from this case. In this case, the fiduciaries filed suit based upon what Gibraltar was alleged to do in allowing Rothstein's Ponzi scheme to continue, not be stopped shorter, and it created more losses. Mr. Harris and Ms. Ellis, who were sued by the trustees and Mr. Morse and the Razorback plaintiffs and everybody else, are employees at Gibraltar. They were specifically alleged to have assisted Rothstein in transferring funds in and out of trust accounts. Is this your example of where the exclusion applies? Absolutely, Your Honor. This case, as in every case brought by – You mean doesn't apply? I'm trying to tell you – give me – it must mean something. Give me an example where you say, yes, our clients wouldn't be covered had they done X. Tell me – give me an example. And I'm trying to – within the context of this case, we have never, never have claimed that all of the allegations in the underlying litigation do not run into the professional services exclusion. You bet we alleged – All right, but please, I'm struggling. Help me. Give me an example. I'm in suspense. Sure. Harris and Ellis were alleged in this case to have, at Mr. Rothstein's request, taken funds from trust accounts belonging to Banyan, which was the feeder fund belonging to Mr. Morse, and Gibraltar knew these funds did not belong to Mr. Rothstein or RRA. And they allowed him to transfer those monies into RRA's operating account or Mr. Rothstein's personal account. That's classic E&O liability. We sued and Morse sued for negligence. We're not claiming that the claims against Harris and Ellis don't run afoul of the professional services exclusion. They absolutely do. Here's the problem. We also allege quintessential management liability against the chief compliance officer, Mr. Sanders, and the chief executive officer, Mr. Hayworth of Gibraltar, not for doing anything with respect to Mr. Rothstein or professional services, but by not following bank policy, federal law, and regulations that are aimed to curb money laundering and Bank Security Act fraud. The officer in this case, Julian Ansari, the bank security officer, came to Mr. Sanders and said, we've got to shut these accounts down. There's illegal activity. I think there's illegal activity going on in these accounts. Mr. Sanders, and by extension, then Mr. Hayworth, were obligated. Their duties do not come with respect to a customer. They come by federal law. This is a highly regulated industry. You're talking about why in a general world they should be liable if your allegations are correct. But I think – and she can correct me if I'm wrong. I think what Judge Carnes is trying to ask you is where does the professional services language stop? In other words, you can have a banker who commits money laundering by engaging in professional services, the transferring of money from one account to another that belongs to the same client. There are no restrictions as between accounts, and yet the banker is facilitating money laundering by allowing money to move to sort of try to hide the paper trail. Would that come within the professional services exclusion? It may, Your Honor, if it was done for the benefit or at the behest of a customer. It was, but the client – the customer was committing money laundering with funds stolen from another victim. In other words, I steal money from – I embezzle money. I steal money somehow, someway from ten victims. I have two accounts at your bank. I put the proceeds of my fraud or my crime into account number one. I go to you and say, listen, every three days transfer X amount of dollars from account one to account two, and then three days later transfer half of that amount to account three of mine also at a different bank through wire transfer. Okay? So everything is legit with you and me within our bank, but I tell you on the side, listen, I know it's a lot of money and I know you may need to get approval to do this given the amounts, but I'll give you a little bit of a kickback if you do this for me. And the bank officer does it. Is that professional services? Arguably the bank officer who performed that for the kickback would run into the professional services exclusion. Who would not would be the chief compliance officer who, like in this case, received a separate complaint about those accounts. But why isn't that compliance officer also performing professional services in reviewing whether or not other bank employees have correctly done their jobs and whether federal laws being complied with? How do you define the professional services of a chief compliance officer, in other words? Okay. And this comes right out of the policy language and it's critical. The professional services exclusion in this policy only applies to professional services performed for others, which has been roundly interpreted as for customers. The duties that we're complaining about with respect to the CEO have nothing to do with anything done or not done by Mr. Harris for Mr. Rothstein. Those duties are independent and imposed by federal law so that so that the institution complies with the federal regulations. That is the line that you are looking for. That is the line that every district court decision in the country that has looked at this. So it covers. So the policy, in your view, provides coverage for bank employees who are doing work for the bank as the bank, but not for any particular client. That is correct. And the law says it's for the bank or for by extension, the regulators, because the regulators tell the banks what they've got. What case do you have that talks about that issue one way or another? All of the cases on our brief outside of Florida that talk about how a professional services exclusion must be narrowly construed to not swallow the coverage for the individual executives for D&O wrongful acts. This is wrongful acts in the management of a business. That is what we're talking about here. And that is. I know it was my question is a little more narrowly tailored and there may not be anything out there, but we're looking for help. OK. Geostar is one of the decisions that deals with the banking context and the narrow, the narrow application in the banking context. I believe it was a banking case that these because these are D&O policies and because you're talking about professional services exclusions, the case law is all over the map. But it always focuses on businesses that provide a business service to customers. And what the courts have been clear about is you've got to draw. Banks provide services for others. Absolutely. That's why you're saying that people within the bank might not be caught within the exclusion because some employees are not providing services for others. They're doing it for the bank itself, even though the bank's mission is to serve others. Correct. American Bank Corp says it directly. It says not every professional service provided by an executive of a bank is for a customer. It is also for shareholders and regulators, for example. Here's the perfect example. And that case involved a similar exclusion? It did indeed. Yes. And drawing out Judge Jordan's hypothetical, let's say your distinction is the CEO is not talking to Rothstein, the CEO's bigger picture guy. But let's say the CEO, Rothstein's such a crook, he's going to bring the CEO within my web and maybe he did here. I don't know. And so he says to CEO, please help me out. Now, all of a sudden, the CEO has obligations to the bank as a whole and to regulators, but he's dealing directly with Rothstein. Now, does the exclusion apply to the CEO? Because now he's really giving great customer service. That's a great question. And here's why the district court got it wrong. Remember, we're here on a motion to dismiss the district court's job was to look at. Answer my question first. I'm intrigued about the answer. The answer is if he if the CEO is solely accused in the underlying litigation of doing things at Rothstein's behest and not also accused of violating. Know your own custom rules and violating banking regulations. Then, yes, just like Harris in our case, he runs into the professional services. And your complaint alleged both kinds of wrongdoing by the CEO, both dealing directly with Rothstein and his obligations to. That is what the district court held, I think, a fair reading. And remember, on a motion to dismiss, all allegations must be accepted as true and all inferences must be about. Those allegations must be resolved in the trustees favor. A fair reading is actually that Mr. Sanders, the chief compliance officer, and Mr. Hayworth, the chief executive officer, did not provide any professional services for Rothstein. They fell asleep at the switch. That's the complaints. Not saying all that. There's some allegation in the complaints you say that does not seem to suggest that they were dealing directly or helping directly. That's correct. And we cited them in our brief. And what is incredibly important is that the allegations have to be separated. The allegations of pure corporate mismanagement and falling asleep at the switch, when you're looking at a duty to defend a complaint, if there is any allegation, any allegation. Our problem, though, is your complaint is set in stone because whatever that complaint was down below when it started, not now, is what the insurance company made a decision on. So we're going to have to read that complaint to figure out. With due respect, it's more than one complaint, Your Honor. It's the DNO adversary complaint filed by the RRA trustee against Harris, Sanders, and Ellis. That's at docket entry 25-1. It's the draft complaint against the CEO, Mr. Hayworth, at docket entry 71-2. And it's the Morse draft amended complaint against all these executives, which is at docket entry 73-1. Unless the insurance carriers, and this is why the district court got it wrong, unless the DNO insurance carriers who abandoned these executives could come forward and say every allegation in all of that underlying litigation only involves professional services for Rothstein with all inferences in our favor, then the motion to dismiss ought to have been denied and leave to amend granted. The district court relieved the carriers of that burden inappropriately and simply cherry-picked the allegations that were on professional services. All right. We've taken you way over your time, and we'll give you your full time for rebuttal, Mr. Major, but I have one more question for you. Yes, sir. Is there anything that you think the district court got right with regards to your claims? In other words, claims that we don't have to, subsets of claims that we don't have to worry about an appeal that might have been asserted in your initial complaint in the district court. What the district court got right was the holding that this DNO executive liability policy grants severable rights to each executive director and officer. And the problem with the district court's opinion, that's what she got absolutely correct. The problem with the district court's opinion is contrary to Florida law in the premier decision and this court's decision and design build, she then construed jointly the any insured language in the professional services exclusion to foreclose even a defense to executives accused of corporate mismanagement of any defense because either the bank itself or one of the employees did in fact or was alleged to have in fact performed a professional service for rosting. And that's flat contrary to Florida law. Okay, Mr. Major. Thank you very much. Thank you. Got your five minutes for rebuttal. Thank you. Who's going first? Mr. Hartley? Yes, Your Honor. May it please the court. My name's Michael Hartley. I represent National Union. We've split our time today so that I will be addressing the professional services exclusion. My colleague, Mr. Kaplan, who represents Twin Cities may have some comments on that exclusion as well, but he would be addressing the arguments as to loss. Your Honors are right that this is an important case, but for a very different reason than what Mr. Mazur has articulated. This case is important because the court is being asked, as the district court was, to uphold the plain language of the exclusion at issue. You know, everybody talks about plain language in text these days, but every time somebody talks about it, there's somebody on the other side saying, you know, it's not quite so plain. Well, let me direct your attention. Let me ask you the question that Judge Karnes asked Mr. Mazur and flip it. Give me an example of a scenario in a banking fraud scenario like this one where the professional services exclusion would not apply. I can give you several. Okay. If the bank's shareholders pursue a derivative action against any of the directors and officers for any form of mismanagement of the bank, writ broadly, so any form of mismanagement at all, any of those allegations are covered. If it's a scenario. They're covered even though the mismanagement inherent in the fact that professional services were provided to Rothstein. That's correct because derivative actions, which are designed to encompass exactly the kind of management issues that plaintiffs are asserting here, is part of the definition of securities claims under the policy and which are expressly excluded from the exception. So that securities PAC component by itself in the exclusion encompasses all of the different kinds of mismanagement claims that are typically brought by the most likely constituency to actually bring those claims. And of course, this is a privately owned bank. But you're saying the concept underlying securities claims are applied here. It's not even the concept. It's the plain language of the definition of a securities claim not only encompasses what oftentimes gets typically associated with a securities claim, which is a 10B5 or an offer in sale, but the actual definition of securities claim has a subpart that specifically includes all derivative claims. Period. As long as they're brought by a security holder of the bank. So anytime a bank shareholder here, a private bank, but one that would have shareholder issues, those would be covered. How about if there's a shareholder action based on something the bank did incorrectly with regard to a client? The bank decides to sink $100 million into a burgeoning new startup venture for a client. And it all turns out to be a Ponzi scheme and the bank loses $100 million and it gets sued by shareholders. Is there coverage? That would be a derivative claim by the shareholders to the extent they're talking about mismanagement of the company? Yes. What does that matter? The plain language says that it bars the performance or failure to perform professional services for others or acts, errors, or omissions relating thereto. So they didn't do due diligence in figuring out whether the startup had any chance of any realistic chance of success. They just think it's a friend of the banks, a friend of the CEOs, a friend of the boards, nice guy, and we're going to pump in $100 million of the bank's money into this new venture. They don't do due diligence and it goes by the wayside. And now there's a lawsuit. Are they covered? If it's a shareholder, Your Honor, that's bringing the case. Yes. The answer is yes. And let me explain why. Because that is the insured's performance or if you think it's the giving of the loan or failure to perform, not doing due diligence, professional services for others or acts, errors, or omissions relating thereto. That plain language covers my hypothetical. I agree with you, Your Honor. Then it's out. If you go to the next paragraph of the exclusion, though, it says, notwithstanding the foregoing, it is further understood and agreed that this endorsement shall not apply to any securities claim. It is not a securities claim. My hypothetical is not a securities claim at all. It is, Your Honor, in the sense that the. Is securities claim defined in the policy? Yes, it is, Your Honor. The securities claim is defined in definition Y, and it includes a securities claim means not only violations of rules and regulations dealing with the purchase and sale of securities, but also one brought derivatively on behalf of an organization by a security holder of such organization. So to the extent that there is a derivative claim that falls within that definition, it would be expressly excluded from the professional carve out to the professional services exclusion. Because of the way that a security claim is defined? That's correct. So no matter what the underlying basis is, all shareholder suits are covered. That's correct. So if a shareholder sued for this Rothstein stuff, there's coverage. And not because it doesn't involve professional services necessarily, but because it falls under the securities claim carve out. Because remember, Your Honor, this is a policy that provides coverage to not just the D's and O's, but to the bank for securities claims. Because this policy was issued with a companion E&O policy that provided coverage for E&O matters, and then a D&O policy that provided coverage for these types of matters along with other matters as well. Is there anything else besides derivative claims that are covered? There are a variety of categories, yes, that would still be covered under the policy. In addition to derivative claims and other types of securities claims, there are employment claims. So any type of harassment, discrimination, wrongful termination, any claim like that, there's a definition of employment practices in the policy, Your Honor, that appears in definition I that lists a wide variety of employment practices that are also covered by the policy. Wrongful dismissal, harassment, discrimination, retaliation, all those kinds of things. There also may be other claims that aren't present here that would nevertheless, like the district court said, the district court pointed to the securities claims. She pointed to employment practices, but she also said that this isn't, her ruling wasn't eliminating the possibility that there were also other claims that may fall within the scope of coverage irrespective of the exclusion. And there may be other circumstances not present here that would. Lawsuits arising out of dealings with suppliers as opposed to customers, for example. Say an officer is involved in an M&A transaction, later becomes accused of absconding with confidential information from the target. Things where you are not actually dealing with conduct that arises directly out of the conduct that is affected by the professional services exclusion. I'd like to point out very quickly, because I only have two minutes, two things. One is that the simplest and most direct language in the exclusion itself is that it bars coverage for any insured for claims arising out of the organizations, in other words, the banks, professional services. That is a very clear, concise excerpt from the language of the policy, and under Florida law, and particularly under the Targis case, or the Taurus case, I apologize, arising out of is clear and unambiguous under Florida law. It requires some connection, not approximate cause, but some connection. You take that language plus the Taurus case, and it leads directly to the decision that the district court made here. Could you please address, in the time you have left, the joint and several issue, or the several and joint issue? Yes. That issue, Your Honor, is a red herring. I think the district court addressed it very concisely, but there is at least three reasons why. One is because the any and uninsured language typically comes up in a situation where you have an exclusion that says this exclusion precludes coverage for claims involving intentional conduct by any insured. There is no other qualifying language in the exclusion itself. Here, our exclusion says it precludes conduct for a claim brought against any insured arising out of professional services by the organization. By its terms, expressly, the exclusion shows that it is applying joint obligations as between the insured who is sued, the any insured, and the organization itself. In that context, this case is significantly different, and frankly, even clearer than all the other cases in Florida and elsewhere that have construed just the any insured language by itself, number one. Number two, the arguments as to severability are all predicated on an express severability clause in the policy itself, which we don't have here. In the typical policy, you have an insuring agreement, you have exclusions that modify the insuring agreement, and then you have conditions which modify everything else. Here, we have an insuring agreement, we have exclusions, but we have no condition, no separate severability clause that creates an ambiguity within the rest of the policy. A provision that says, this policy shall be construed as to each insured as if none of the other insureds existed. We don't have anything here, and every single one of the cases that are cited by plaintiffs on that point, everyone, involves an express severability clause and expressly holds that that is the basis for their decision. And I thought the district court said in a footnote, you know, all this is fascinating, and I use that term loosely, and it's very hard to delve beneath, but she said it doesn't matter, because all the claims here are sort of the same. Is that true? And let's say in a hypothetical that they've thrown in an additional claim beyond what's already in the complaint to say, yeah, in Joe Blow, the employee, he had a supplier issue. You say that that's not covered. If a claim is thrown in here that would not be subject to the professional exclusion, then are you saying that employee subject to that claim would not be covered or severable, or are you saying, no, you know, if you've got one good claim stuck among others that aren't covered, everybody goes down with the ship? Those are, I think, two separate issues, Your Honor. The joint and severable issue deals with the conditions of coverage under the policy. I think what the district court was addressing— Well, in my example, what's your answer to my example? You've thrown in a guy with a supplier claim that you say is not covered by the exclusion, but he's surrounded by claims that are. That's where severability might come into effect. What happens to that defendant? To the extent that there is a separate standalone, for example, employment law claim that's placed in the policy, the policy may address and respond to that defendant that's being— I'm talking about our case. No, I understand. What's the answer? The answer is if there is a defendant that's added in that just has an employment law claim against them, then the policy would probably provide coverage to that employee for the employment law claim against him, but not as to anything else. All right. Thank you, Your Honor. Thank you so much. Mr. Kaplan. Good morning. If it pleases the Court, Jim Kaplan on behalf of Twin City. I wanted to briefly touch on a point that was covered during Mr. Hartley's presentation, and in particular, Your Honor's comment about plain language. Plain language used too frequently, I agree, but in this case, it's apt. And it was used by Judge Williams, and she took great care in her analysis. You'll find it on page 17 of the order being appealed from. And the plain language here really matters because it's why the decision here ought to be relatively simple. The exclusion says that professional services are barred because any claim based against any insured. So here, where you have more than one insured, if any one of them committed professional services for others, and that is the basis of the liability sought in the underlying complaint, then the claims are barred. But my hypothetical that I just asked, which perhaps I should have directed you. This was your area. I'm sorry. My hypothetical throws in a defendant sued for an employment issue or supplier issue, and that person not covered by the exclusion. Does everybody go down with a ship under your interpretation? No, because in Your Honor's hypothetical, you've enunciated a separate claim. This is not about lawsuit. This is about claim. So in Your Honor's hypothetical, if you've got these four bank officers who are alleged to have been in and up to their neck with Mr. Rothstein, and a fifth who, by the way, failed to pay a bill or failed to deal with a supplier honestly or violated someone's employment rights, that's a separate claim. But insofar as they are all accused of the same claim. In response to the lawsuit when it's initiated, you would say defendant number five will defend you. Yes. One through four, no luck. Yes. Right. That is exactly the point. So the other point that I wanted to make before I move on to lawsuit. Can you plead around that by segmenting a claim? In other words, there was this error committed with regards to this request by Rothstein in January of 2007. And yet there was this other event that the people high up at the bank, the CFO, the CEO, the board failed to catch committed in June of 2009. I think the answer to Your Honor's question is yes. And let me elaborate. What we're talking about here is not Mr. Mazur's complaint. No, I know. It's the underlying complaint. Absolutely, you can plead around it. And people do it all the time for all kinds of strategic reasons, either because they want to implicate coverage or because they want to exclude coverage. And that's a plaintiff's lawyer's right. He is the captain of the ship. He is the captain of his pleading. And he can do that. But the moment Mr. Mazur gets hired, the die has already been cast. He's stuck with the underlying complaint. And in this case, that made Judge Williams' job not simple but also not complex. She read the complaints carefully, wrote about them at length, and reached the correct decision. The other point I'd make on professional services before I leave the area is that it is so clear that this endorsement is joint and not several by its language, by the reference within the exclusionary portion of the policy that highlights specific other exclusions that are to be read severally but not this one, And most importantly, by endorsement 14, which relates to the application and which Judge Williams analyzed separately, and it kind of jumped off the page at her because at the top of the page, literally, in larger font and in bold print, it says, Endorsement 14. When they wanted to address severability, they knew exactly how to do it. Now, Judge Williams did not reach loss. But if for some reason you decide that she was wrong on the professional services exclusion, you have the right to affirm on that basis. In this case, Well, let me stop you for a second. You're almost out of time. But that wasn't addressed by Mr. Mazur. And we obviously are going to address every single issue that was raised in the briefs by both sides. But if you want to raise that issue, then go ahead. But we're going to give him an opportunity to discuss it in his rebuttal. So it's your choice. If you want to address it, go right ahead. You know, I learned at an early age that when there's a red light blinking, maybe you should stop. Thank you, Your Honor. If you're in a place like Miami, it's sort of just permissive. So you never know. Okay, Mr. Mazur, you've got your five minutes. Thank you, Your Honor. This case and the interpretation reached by the district court does not involve the carve out for securities claims. It involves this private bank did not spend hundreds of thousands of dollars in premium for $25 million in annual director and officer liability coverage for a small bank to protect against a derivative claim by some of the small blank shareholders or derivatives. You know, security suits can sometimes be very expensive and demand a lot of money. It can, but this is a private bank, Your Honor, and a small one at that. And they're not even right about endorsement 10. What's the capitalization of this bank? I don't know, Your Honor, but it is not big. Some private banks are big. Some private banks are smaller. Here's the point. Where the DNO exposure is is from regulators and fiduciaries. That's what management liability insurance is designed to prevent. This has a tag alone EPLI employment practices. It's limited to sexual harassment claims. That's endorsement number 10. Doesn't even include all the rest of the other employment. It's just a fallacy. But that's because generally speaking, most anti-discrimination statutes in the employment context don't allow for individual liability. So, for example, if you're terminated on the basis of race or gender or ethnicity or religion, your claim is against the entity that discriminated against you, not against the individual person who effectuated that discrimination. So that makes perfect sense to me. There's no coverage for that either under this. What's that? There's no entity coverage for anything besides sexual harassment claims. But sexual harassment claims you could assert under state tort law theories against an individual. You could. My point is this policy doesn't cover it. And what the district court got wrong was on a motion to dismiss the insurer's carrier's burden was to demonstrate that each allegation against each executive accused of misconduct falls conclusively within the professional services exclusion, not subject to any other inference. But you think all of them fall within? Because when I asked you before, you didn't give me an example of one that she got right. I'm sorry if I misunderstood your question. The allegations of E&O misconduct by Harris and Ellis absolutely fall within the exclusion. This was a case brought by a fiduciary. So that we're clear, this is the guts of your argument. Harris and Ellis, whatever that one is, not covered. What is covered? Hayworth, the CEO, and Sanders, where the allegations against them were for pure management liability. What a D&O policy is designed to cover. And unless the insurance carriers could demonstrate, which they can't and they didn't, that every single allegation in those three complaints I talked about that comprise the underlying litigation only complained about professional services provided to Rothstein, the motion to dismiss had to be denied. But your argument is we need to branch out and see not what they did, what kind of claim is there. So because even though the conduct is exactly the same, you say because the claim against the CEO and the compliance person was pure management liability, it's covered. But the problem with your argument is that the exclusion gives another exclusion for securities claims, showing that the policy is looking at certain types of claims, but the policy says the only type of liability or claim we will cover that might be implicated by what you're saying is securities, not pure management liability. That's just wrong, Your Honor. The insuring agreement makes clear that it covers typical D&O wrongful acts, which are breaches of duty. The coverage specific to the executive says you are covered for any management wrongful act. That is what a D&O policy covers. The reason the district court got it wrong by applying this exclusion jointly is it guts, absolutely guts management liability for a professional services corporation like a bank. That's why all the case laws say you cannot read this exclusion so broadly. You must only read it so it only excludes the allegations against those management people or those executives who provided the actual professional service and absolutely not where a CEO or chief compliance officer decides not to listen to one of their BSA officers saying we got problems in these accounts. You got to issue a SAR, and they decide not to do it. That is just pure management liability. That is what this policy covers, and the reason the district court got it wrong is because she didn't employ the Florida required rules of construction, which is that exclusions must be construed narrowly, that coverage should be preserved where reasonably possible consistent with the type of the policy purchased. Here a D&O policy and that a duty to defend the entire suit exists when there is but a single allegation against a single defendant for covered misconduct and they haven't showed that everything is conclusively excluded because you paid for that duty to defend when you bought the policy. Here when you look at the underlying litigation, when you look at those three complaints at docket 25-1, 71-2, and 73-1, it will scream off the page that the chief compliance officer, Mr. Sanders, and Mr. Hayworth were alleged to have breached their management responsibilities. That's what's covered by this lawsuit, and I will not address the loss argument since we did it. You don't need to. We've got both of your positions on the papers. Thank you very much. Thank you so much. Because those allegations were pled, we ask this court to reverse the district court granting a motion to dismiss with prejudice and denying leave to amend, and I thank you for the privilege. All right. Thank you very much.